PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**January 2, 2008**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re: <br><br> DARVID EINAR SEASTROM, <br><br> Debtor. | Case No. 07-41519 |
| DARVID EINAR SEASTROM, <br><br> Plaintiff, <br><br> v. <br><br> HUNINGTON D. SEASTROM and MARK F. SEASTROM, individually and the marital community composed thereof, <br><br> Defendants. | Adversary No. 07-4074 <br><br> **MEMORANDUM DECISION** <br><br> **NOT FOR PUBLICATION** |

Trial was held in this matter on December 11, 12, and 17, 2007, on the Complaint to Avoid Fraudulent Conveyance, to Quiet Title, for Damages and Injunctive Relief filed by Darvid Einar Seastrom (Plaintiff) against Hunington D. Seastrom and Mark F. Seastrom, individually and the marital community composed thereof (Defendants). At the conclusion of the trial, the Court took the matter under advisement. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052.

MEMORANDUM DECISION - 1

This is a core proceeding under 28 U.S.C. § 157(b)(2). Based on the evidence, testimony and arguments presented, the Court's findings of fact and conclusions of law are as follows:

I

## FINDINGS OF FACT

The Plaintiff is a divorced 65 year old man with two step-children whose sole source of income is social security. On April 8, 2005, the Plaintiff's mother passed away, leaving him as the trustee of a revocable living trust (Trust), under which he and his sister were also the contingent beneficiaries. Pursuant to the terms of the Trust, the Plaintiff inherited significant personal property and the real property (Property) where the Plaintiff and his mother had resided at the time of her death. At the direction of the Plaintiff, on May 31, 2005, a quit claim deed (Trust Deed) was prepared purporting to transfer title from the Trust to the Plaintiff. The Trust Deed, however, misidentified the Plaintiff, both as trustee/grantor and beneficiary, as Darvid R. Seastrom, as opposed to his correct name, Darvid E. Seastrom.

Immediately prior to and after his mother's death, the Plaintiff continued to live on, maintain and improve the Property. The Plaintiff suffers from alcoholism, depression, thyroid problems and the long-term effects of childhood polio. The evidence indicates that by November, 2005, he had spent almost all of the inheritance he had received from his mother through the Trust.

The Plaintiff and his daughter-in-law, Hunington Seastrom, had always enjoyed an especially close relationship, and he had expressed a desire in the past that the Property, which borders a lake, remain in the family. On November 17, 2005, the Plaintiff granted her his Power of Attorney, and on the same day, quit claimed the Property to her as a "gift" (Gift Deed).

The Plaintiff had resided on the Property by himself until November, 2005, when the Defendants relocated from their Tumwater residence and moved in with the Plaintiff. Both the Plaintiff and the Defendants were experiencing financial problems and believed that by residing together they could reduce their expenses. The Defendants' Tumwater residence was subsequently placed on the real estate market for sale.

The relationship between the Plaintiff and the Defendants began to sour while living together, and the Defendants returned to their home in Tumwater in March, 2006. The Plaintiff has remained living on the Property through the date of trial. At the time of the Gift Deed, the Property was free and clear of liens. Within one year, on October 11, 2006, the Defendants borrowed money from the Washington State Employees Credit Union in the amount of $55,000, primarily to pay personal debts, and granted the credit union a first position deed of trust on the Property as security.

The Plaintiff and his step-son, Mark Seastrom, who had not always enjoyed the best of relationships, had a particularly bad altercation in March, 2007, when the Defendants, who were in need of money, requested that the Plaintiff begin paying rent at $500 per month. The Plaintiff retaliated by threatening to take his daughter-in-law off the Gift Deed. She retaliated by giving him a 20-day notice to terminate tenancy on March 30, 2007. Additionally, on May 1, 2007, Ms. Seastrom granted her friend and "godmother," Trisha Swanson, a deed of trust in second position on the Property, securing a $90,000 promissory note. This promissory note was given in consideration of money that Ms. Swanson had given or loaned to the Defendants over the past several years. On May 1, 2007, Ms. Seastrom commenced an unlawful detainer action in the Pierce County Superior Court to remove the Plaintiff from the Property.

MEMORANDUM DECISION - 3

On May 11, 2007, the Plaintiff filed for relief under Title 11, Chapter 13, and on May 23, 2007, filed this adversary proceeding. The Plaintiff prays for judgment against the Defendants by requesting that this Court (1) conclude that the original transfer from the Trust to the Plaintiff did not convey title so that the title to the Property remained in the Trust; (2) rule that the Plaintiff retained a life estate in the Property; (3) impose a constructive trust of the Property; (4) rule that Defendant Hunington Seastrom breached a fiduciary duty owed to the Plaintiff under the Power of Attorney; or (5) in the alternative, rule that the quit claim deed is void as a fraudulent conveyance pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(I) and (III). The Defendants have counterclaimed for damages in an amount not less than the benefit received by the Plaintiff as a result of the $55,000 loan from the Washington State Employees Credit Union.

**II**

**CONCLUSIONS OF LAW**

**A.  Trust Deed**

The Court initially must determine whether the original transfer from the Trust to the Plaintiff was valid so as to convey title to the Property. The Plaintiff contends that because the Trust Deed designated both the grantor and grantee as Darvid *R.* Seastrom, rather than Darvid *E.* Seastrom, the Plaintiff was never conveyed an interest in the Property. Plaintiff's argument is not persuasive. RCW 64.04.020 requires that every deed be in writing, signed by the party bound thereby, and acknowledged by the party before an authorized person. Cases hold that despite a misnomer of a party in a deed, title passes from the actual grantor to the actual grantee when evidence is presented satisfying the court of the error in the names. See Mid-Am. Nat'l Bank & Trust Co. v. Gymnastics Int'l, Inc., 6 Ohio App.3d 11, 12-13, 451 N.E.2d

MEMORANDUM DECISION - 4

1243, 1245 (1982); Webster-Art & Strength Bldg. & Loan Ass'n v. Armondo, 27 Backes 219, 221-22, 15 A.2d 890, 892 (1940). In this case, the evidence before the Court establishes that the Plaintiff, as trustee of the Trust, had the authority to and intended to grant title to the Property to himself. Consistent with this intent, the Plaintiff signed the Trust Deed, which was acknowledged by a notary public. Consequently, the Trust Deed dated May 31, 2005, effectively granted title of the Property to the Plaintiff.

### B. Gift Deed

On its face, the Gift Deed from the Plaintiff conveys to Ms. Seastrom as a "gift" the Property together with all after acquired title of the grantor. "'[W]hen construing a deed, the intent of the parties is of paramount importance.'" Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines, 156 Wn.2d 253, 271-72 (2006) (quoting Brown v. State, 130 Wn.2d 430, 437 (1996)). Even absent ambiguity, Washington State courts have "consistently examined the circumstances surrounding the transfer and subsequent conduct of the parties . . . if helpful in ascertaining the parties' intent . . . ." Kershaw Sunnyside Ranches, Inc., 156 Wn.2d at 272 n.15. This is consistent with the "context rule," under which extrinsic evidence is admissible, regardless of whether the contract language is deemed ambiguous, to assist the court in ascertaining the parties' intent and in interpreting the contract. Spectrum Glass Co., Inc. v. Pub. Utility Dist. No. 1 of Snohomish County, 129 Wn. App. 303, 310-11 (2005). The court may consider: "(1) the subject matter and objective of the contract, (2) the circumstances surrounding the making of the contract, (3) the subsequent conduct of the parties to the contract, (4) the reasonableness of the parties' respective interpretations, (5) statements made by the parties in preliminary negotiations, (6) usages of trade, and (7) the

MEMORANDUM DECISION - 5

course of dealing between the parties." Spectrum Glass Co., Inc., 129 Wn. App. at 311 (citing Berg v. Hudesman, 115 Wn.2d 657, 666-68 (1990)).

The Plaintiff contends that consistent with the extrinsic evidence, the Plaintiff intended to retain an interest in the Property so that he could live there for the remainder of his life. To support his contention, the Plaintiff points to the Power of Attorney given to Ms. Seastrom on the same day as the Gift Deed, which includes as other terms, "Right of Survi[v]orship." While this evidence appears to establish the Plaintiff's intent to retain some interest in the Property, "'[e]xtrinsic evidence is to be used to illuminate what was written, not what was intended to be written.'" Spectrum Glass Co., Inc., 129 Wn. App. at 311 (quoting Hollis v. Garwall, Inc., 137 Wn.2d 683, 697 (1999)). Thus, the Gift Deed plainly conveys a fee simple interest in the Property to Ms. Seastrom.

### C. 11 U.S.C. § 548 Fraudulent Transfer

The Plaintiff seeks to avoid his transfer of the Property to Ms. Seastrom under 11 U.S.C. § 548(a)(1)(B)(ii)(I) and (III), which allows avoidance of a transfer of an interest of the debtor in property made within two years before a debtor's bankruptcy filing. Under subsection (B)(ii)(I), the Plaintiff is required to prove that he was insolvent on the date of the transfer, November 17, 2005, or became insolvent as a result of the transfer. There is limited evidence before the Court regarding the Plaintiff's financial situation at the time of the transfer. This evidence indicates that when he transferred the Property, the Plaintiff had spent almost all of his inheritance. Even so, the Plaintiff owned, and still owns, ten acres of property in Yelm (Yelm Property) free and clear, which had a tax assessed value of $80,350 for 2005-2006. Also, he was receiving social security payments, which in May, 2007, were $1,397 a

MEMORANDUM DECISION - 6

month. Conversely, the Plaintiff presented no evidence of his liabilities at that time. The Plaintiff has not established he was insolvent at the time of the transfer.

With respect to whether the transfer rendered him insolvent, again, the evidence does not support this allegation. The Court has only the bankruptcy schedules on which to rely in analyzing this section. According to the schedules, filed one and a half years after the transfer, the Plaintiff valued the Yelm Property at $299,000, and he listed $82,000 in personal property. His liabilities were stated to be $29,035.92. Taking into consideration the lower tax assessed value of the Yelm Property for 2006-2007, the Plaintiff still was not insolvent at the time of the bankruptcy filing. The Plaintiff has not met his burden under subsection (B)(ii)(I).

Under subsection (B)(ii)(III), the critical inquiry is whether the Plaintiff, at the time of the transfer, had "an intent or belief that debts [would] be incurred beyond the debtor's ability to pay as they mature[d]." 5 L. King, Collier on Bankruptcy ¶ 548.05[4], p. 548-52.1 (15th ed. rev. 2007) (citation omitted). Under this subsection, the movant must show

> more than a chronological relation between the act of the debtor and the subsequently incurred debts. Proof must be adduced sufficient to justify the conclusion that the debtor's transfer or obligation was contemporaneous with an intent or belief that subsequent creditors will be injured, *i.e.*, that the debtor will be unable to take care of them as their claims mature. Existence of such a mental attitude on the part of the debtor is inevitably one of fact . . . .

Collier, ¶ 548.05[4], p. 548-52.1-52.2 (citations omitted). While the Plaintiff's testimony establishes that the Plaintiff lived a financially irresponsible life after the death of his mother, there is no evidence that the Plaintiff transferred the Property with the intent or belief that he subsequently would be unable to pay his creditors as their claims matured. The Plaintiff has not met his burden under subsection (B)(ii)(III).

MEMORANDUM DECISION - 7

### D. Constructive Trust

The Plaintiff contends that even if a fee simple was conveyed to Ms. Seastrom, the equities of the case compel the Court to impose a constructive trust to the extent of a life estate in the Property for the Plaintiff's benefit. A constructive trust arises by implication of law and may be established by parol evidence. Stocker v. Stocker, 74 Wn. App. 1, 6 (1994). The basis for imposing a constructive trust must be established by clear, cogent, and convincing evidence. Baker v. Leonard, 120 Wn.2d 538, 547 (1993). "A constructive trust will be found when property is acquired under circumstances such that the holder of legal title would be unjustly enriched at the expense of another interested party." Huber v. Coast Inv. Co., 30 Wn. App. 804, 810 (1981). Although "fraud, misrepresentation, bad faith, or overreaching generally provide the rationale for imposing constructive trusts," they may be "imposed in broader circumstances not arising to fraud or undue influence." Baker, 120 Wn.2d at 547. "A constructive trust may arise even though acquisition of the property was not wrongful. It arises where the retention of the property would result in the unjust enrichment of the person retaining it." Mehelich v. Mehelich, 7 Wn. App. 545, 551 (1972). When there is no evidence of fraud or wrongdoing, a constructive trust may be imposed when "an equitable base is established by evidence of intent" that the legal title holder was not the intended beneficiary. Baker, 120 Wn.2d at 548 (citing Mehelich, 7 Wn. App. at 545).

During closing arguments, the Plaintiff appeared to acknowledge that there is no allegation of wrongdoing or fraud by Ms. Seastrom at the time the Gift Deed was executed. Thus, to impose a constructive trust, the Court must find unjust enrichment based on the Plaintiff's intent that he retain an interest in the Property.

The credible evidence in this case establishes it was the Plaintiff's intent to reserve a life estate in the Property for his benefit and that Ms. Seastrom would be unjustly enriched if allowed to retain the Property in fee simple. While the Gift Deed itself does not speak of a retained interest, the Power of Attorney executed the same day as the Gift Deed clearly expresses the Plaintiff's expectation to retain an interest in the Property through use of the phrase "Right of Survi[v]orship." This expectation is supported by the credible testimony of the Plaintiff that he intended to stay on the Property until his death, at which time it would pass to Ms. Seastrom. Furthermore, in the Power of Attorney, the Plaintiff expressly withheld from Ms. Seastrom any authority to conduct "real estate transactions" on his behalf because, as the Plaintiff testified, he did not want to lose the Property. Subsequently, the Plaintiff had his attorney modify the Gift Deed, by adding that Ms. Seastrom was granted "[a]n undivided 50% interest in" the Property. Although this modified deed was never recorded or transmitted to Ms. Seastrom, it supports the Plaintiff's position that he always intended to retain some type of interest in the Property.

The Plaintiff's subsequent conduct also establishes by clear, cogent, and convincing evidence that the Plaintiff intended to remain living on the Property. After executing the Gift Deed, the Plaintiff made improvements to the Property, including installing new carpet, refurnishing several rooms, improving the landscaping, and repairing the deck. While the Plaintiff did not consistently pay his bills, he intermittently paid some of the Property bills. Additionally, the Plaintiff was never charged or paid rent until the March, 2007, demand.

The value received by Ms. Seastrom, as well as her actions taken in respect to the Property, further supports a finding of unjust enrichment by clear, cogent, and convincing evidence. The Property, which the Plaintiff received unencumbered, was valued by the

Plaintiff in his bankruptcy schedules at over $320,000 in May, 2007. Ms. Seastrom paid no consideration for this Property. Even so, less than one year after receiving the Gift Deed, Ms. Seastrom granted the Washington State Employees Credit Union a deed of trust on the Property to secure a loan in the amount of $55,000. The evidence establishes that approximately $13,000 of this money went to pay the Defendants' credit counseling debts, approximately $25,000 went to pay off Ms. Seastrom's Corvette, and approximately $9,000 went directly to the Plaintiff. The remaining $8,000 or so stayed in the Defendants' bank account where it was spent on miscellaneous personal items by the Defendants.

Approximately seven months later, Ms. Seastrom granted another deed of trust on the Property to Patricia Swanson, this time securing a note in the amount of $90,000 for funds previously spent by Ms. Swanson on behalf of the Defendants. Ms. Swanson had paid for, among other items, family travel, restaurant charges, entertainment, gas, groceries, utilities, property taxes, and mortgage payments. This deed of trust was granted during the time the Plaintiff's attorney put Ms. Seastrom on notice of the Plaintiff's intent to seek bankruptcy relief. Furthermore, the promissory note terms and deed of trust were signed by the Defendants, even though the evidence establishes that the Defendants, who are employed as a construction worker and grocery store checkout clerk, have insufficient income to repay Ms. Swanson.

The testimony of the Plaintiff and Ms. Seastrom establish that the Plaintiff sought and received help from the Defendants in paying bills, transporting the Plaintiff to medical appointments, and assisting the Plaintiff through his alcoholism and depression. It also establishes that the parties discussed and attempted to combine households in order to save money, but with no success. At the same time, the evidence establishes that the Defendants

MEMORANDUM DECISION - 10

lived beyond their means and were habitually strapped for cash. It appears that the Defendants' financial situation had not improved at the time Ms. Seastrom requested $500 in rent from the Plaintiff for residing on the Property. Despite the allegedly close relationship between the parties, after the Plaintiff refused to pay rent on the grounds that he was entitled to live in the house rent-free, the Defendants moved to terminate the Plaintiff's residency at the Property. It appears to be the Defendants' position that the Plaintiff can instead live on his Yelm Property, which credible testimony establishes does not have a septic system and is barely livable.

In summary, the Court finds and concludes that based on clear, cogent and convincing evidence set forth above, the Plaintiff intended both during and after granting the Gift Deed, that he have the right to live on the Property for the remainder of his life. Furthermore, the Court finds and concludes that Ms. Seastrom would be unjustly enriched at the expense of the Plaintiff if allowed to retain a fee simple interest in the Property. The Plaintiff has established grounds to impose a constructive trust by clear, cogent and convincing evidence. While it may be unclear from the evidence what precise legal interest the Plaintiff expected to retain in the Property, it is clear that he, at a minimum, intended to remain on the Property free of rent until his death. This is generally consistent with an intent to retain a life estate in the property. See Mehelich, 7 Wn. App. at 550-51 (where the appellate court upheld a constructive trust imposing a life estate even though evidence was unclear regarding the precise nature of the interest the parties would have in the property). Accordingly, the Court concludes that Ms. Seastrom holds in trust for the benefit of the Plaintiff, a life estate in the Property.

Notably, with respect to the two liens now encumbering the property—Washington State Employees Credit Union and Ms. Swanson—the Plaintiff indicated during closing

arguments that he is not asking the Court to find the liens ineffective as to the life estate. Rather, the parties agreed that the validity of these liens, and their effect on the Plaintiff's life estate, is not before the Court.

Lastly, there has been insufficient evidence presented to establish that Ms. Seastrom breached a fiduciary duty under the Power of Attorney that would lead to either equitable or monetary relief on behalf of the Plaintiff.

### E. Counterclaim

The Defendants argue that if the Court imposes a constructive trust granting the Plaintiff a life estate, they are entitled to damages not less than the benefit received by the Plaintiff as a result of the $55,000 loan from the Washington State Employees Credit Union. At the trial the Plaintiff appeared to concede that if a constructive trust was imposed, he would be responsible for the maintenance and possessory costs of the life estate. The Court makes no ruling on the amount of the Defendants' request for damages at this time, if any, but invites the parties, should they be unable to reach a settlement on this issue, to set the matter for hearing within sixty (60) days for further consideration by the Court.

DATED: January 2, 2008

_____/s/ Paul B. Snyder_____
Paul B. Snyder
U.S. Bankruptcy Judge